UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| PRINCESSE D'ISENBOURG ET CIE LTD, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3: 12-004-DCR |
| V. | ) ) ) | |
| KINDER CAVIAR, INC., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of Plaintiff Princesse D'Isenbourg et Cie, Ltd.'s ("Isenbourg") Motion for Summary Judgment.  [Record No. 30]  Isenbourg contends that Defendants Kinder Caviar, Inc. ("Kinder Caviar"); Blackstar Fish Co., Inc. ("Blackstar Fish"); Cornelia Joyce Kinder ("Joyce Kinder"); Cornelia Joyce Kinder d/b/a Black Star Caviar Co. ("BlackStar Caviar"); Stephen Kinder; and Donald Kinder should be held jointly and severally liable for the judgment of $299,240.00[1] entered against Defendant Kinder Caviar in a previous case. [*See* Civil Action No. 3:09-29-DCR at Record No. 135.]  Isenbourg first argues that summary judgment is appropriate because Kinder Caviar transferred assets "without valuable consideration while it was a Debtor," rendering the transfers voidable under Kentucky Revised Statutes ("KRS") § 379.010.  [Record No. 30-2, p. 5]  Next, Isenbourg argues that the Kinders

---

[1]   The previous judgment awarded Plaintiff Isenbourg $299,240.00, together with pre-judgment interest at the rate of 8% and post-judgment interest in the amount of 0.11% against Defendant Kinder Caviar, Inc. Isenbourg was also awarded all taxable costs incurred in the action.

fraudulently transferred and conveyed assets of Kinder Caviar to hinder, delay, and impede Isenbourg's ability to collect upon the judgment entered against Kinder Caviar. [*Id.,* p. 6] Isenbourg avers that sufficient "badges of fraud" exist to create a rebuttable presumption of fraudulent intent on the part of the defendants, and that the defendants have failed to rebut that presumption. [*See id.*, p. 9; *see also* Record No. 50, pp. 6-8.]

The defendants respond that summary judgment is inappropriate because a judgment against Kinder Caviar in this case would be redundant to the judgment already entered against it in the previous case. The defendants point out that, other than Kinder Caviar, none of the other defendants were parties to the original action and, therefore, did not have the opportunity to defend themselves in that action. [Record No. 33, p. 2] Second, the defendants argue that there are genuine issues of material fact regarding whether the transfers in question were fraudulent or voidable. [*Id.*, pp. 11-12] Finally, the defendants argue that the remedy that Isenbourg seeks — to impose the previous judgment against the defendants in this action — is improper under the statute, and because doing so would violate the defendants' due process rights under the United States Constitution. [Record No. 33, p. 9] For the reasons stated below, the Court will deny Isenbourg's motion.

## I.

This action arises out of a prior case between Isenbourg and Defendant Kinder Caviar, Civil Action No. 3: 09-29-DCR. Defendant Kinder Caviar is a producer and exporter of caviar located in Owenton, Kentucky.[2] Isenbourg is a purveyor of fine wines and gourmet foods

---

[2]   The facts regarding the prior contract between Kinder Caviar and Isenbourg are taken from the previous action. [*See* Civil Action No. 09-29-DCR at Record No. 95.]

located in London, England.  In the fall of 2008, Isenbourg and Kinder negotiated a transaction whereby Isenbourg would purchase approximately 550.80 pounds of caviar to be imported into the United Kingdom.  A one-page invoice memorialized the contract on October 20, 2008.  For a variety of reasons, Kinder Caviar was unable to meet its obligations under the agreement.

On June 26, 2009, Isenbourg filed a complaint against Kinder Caviar alleging breach of contract and unjust enrichment arising out of this breach of contract.  On February 2, 2011, the Court granted summary judgment in favor of Isenbourg on liability for the breach of contract claim, but withheld judgment on the issue of damages.  [*See* Civil Action No. 3: 09-29-DCR at Record No. 95.]  Following a bench trial on the issue of damages, the Court entered Judgment against Kinder Caviar, awarding damages of $299,240.00 together with interest and costs.  [*Id.* at Record No. 135]  At some point prior to the entry of the Judgment, Kinder Caviar ceased its business operations and closed its bank accounts.  [Record No. 7, p. 2; Record No. 30-2, p. 2]  Additionally, on March 14, 2011, a federal indictment was filed in the Southern District of Ohio against Stephen and Joyce Kinder, Kinder Caviar, and Black Star Caviar on various charges "arising from their operation of a commercial fishing and caviar production business."  [Record No. 33, p. 2]  Although the parties dispute the reasons for the transfers in question, it appears to be undisputed[3] that a number of monetary transfers were made among the defendants, both prior to and after the entry of the Judgment.  [Record No. 33-1]  Additionally, Isenbourg claims that

---

[3]     Defendants state that "[a]ssuming, arguendo, the various transfers itemized did occur, each of these transfer was made in return for valuable consideration."  [Record No. 33, p. 11]  Despite the fact that the defendants seem to admit the transfers did occur only "for the sake of argument," at other places in the defendants' response and in attached affidavits, the defendants do acknowledge that various transfers occurred.  The only questions appears to be the intent behind the transfers.

it is undisputed that it has been unable to collect the previous judgment against Kinder Caviar. Although Kinder Caviar does not address this assertion, it does appear that Isenbourg has been unable to collect the prior judgment.

In its Complaint, Isenbourg argues that it is entitled to relief because the transfers among the defendants in this case were fraudulent. [Record No. 7] Isenbourg attaches two bank statements, one it identifies as Kinder Caviar's account, and one it identifies as BlackStar Caviar's account. [Record Nos. 30-2, 30-4] There are 73 transactions in the Exhibit identified as Kinder Caviar's account during the time from when the original Complaint was filed on June 26, 2009, and ending on December 29, 2011, about two weeks after the Judgment was entered in that case. [Record No. 30-3] The account identified as BlackStar Caviar's account lists 86 transactions, from the time the original Complaint was filed on June 26, 2009 until January 13, 2012. [Record No. 30-4] It is unclear whether Isenbourg is alleging that all of these transactions are fraudulent; however, Isenbourg cites two specific conveyances as fraudulent:

1) Mr. and Mrs. Kinder sold the 550 pounds of caviar that was the basis of the prior proceeding for approximately $66,000.00 in "late 2011." "The sale proceeds were deposited to a bank account in the name of Black Star Caviar Company, which is the Defendant, Cornelia Joyce Kinder's assumed business name." [Record No. 7, p. 4]

2) Mr. and Mrs. Kinder and Black Star Caviar Company made "large cash 'loans'" to Defendant Donald Kinder in 2011, "during the pendency of the prior lawsuit, presumably to assist in the start up, funding and operation of Blackstar Fish Co., Inc." [Record No. 7, p. 4]

Isenbourg requests attorney's fees and costs, as well as punitive damages in the amount of "at least" $250,000.00. [*Id.*, p. 5] In addition, Isenbourg asks the Court to not only void the transfers, but to impose the previous Judgment on all the defendants in this case.

## II.

Summary judgment is appropriate when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* (c)(1). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To avoid summary judgment, the nonmoving party must do more than cast some "metaphysical doubt" on the material facts. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Matsushita*, 475 U.S. at 586). Instead, it must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Id.* With this standard in mind, the Court turns to Isenbourg's arguments regarding why summary judgment is proper in this case.

### A.    **Fraudulent Transfers**

Isenbourg alleges that Defendants Stephen and Joyce Kinder "caused the transfer of all of Kinder Caviar, Inc.'s assets and all of its operations over to the Defendants, Cornelia Joyce Kinder, a/b/a Black Star Caviar and the Defendant, Blackstar Fish Co., Inc." [Record No. 7, p. 2]

Isenbourg first argues that it is entitled to summary judgment because these transfers were fraudulent based upon KRS § 378.020,[4] which states:

> Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors, but shall not, on that account alone, be void as to creditors whose claims are thereafter contracted, nor as to purchasers from the debtor with notice of the voluntary alienation or charge.

KRS § 378.020.   The purpose of the fraudulent conveyance statutes in Kentucky is to place creditors in the same position they were in prior to the voidable transfer.  *See Mattingly v. Gentry*, 419 S.W.2d 745, 747 (Ky. 1967). Isenbourg argues that it is entitled to summary judgment under this statute because:

> (1) The Kinders caused the transfer of all Kinder Caviar's to themselves, Black Star Caviar, Donald Kinder, and BlackStar Fish, (2) the transfers were made at a time when Kinder Caviar was a debtor, (3) without valuable consideration of the transfers, and (4) Isenbourg was a creditor at the time of the transfers.

[Record No. 30-2, p. 6]

In response, the defendants first argue that Kinder Caviar did not transfer any assets without receiving valuable consideration. [Record No. 33, p. 11]  Kinder Caviar states that the following consideration exists for the transfers:

> Stephen and Joyce Kinder loaned Kinder Caviar money to keep it afloat, this is certainly valuable consideration that Kinder Caviar received in exchange for its payments on those loans.  Likewise, Donald Kinder executed a promissory loan on the loan from his parents to purchase real property.  His promise to pay according to that agreement is also valuable consideration.  The attorneys who received the proceeds from a Kinder Caviar sale provided valuable consideration to Kinder Caviar in the form of legal services.  In fact, each of the transactions

---

[4]     The Court notes that Isenbourg erroneously cites to § 379.020; however, it is clear that it is actually referring to § 378.020.

that took place during the time between the filing of the complaint in the prior litigation and the date of the Judgment is subject to the same analysis and conclusion --- each of those hundreds of transfers was for valuable consideration.

[Record No. 33, p. 11]  Thus, the defendants argue that each of the "hundreds" of monetary transfers that occurred from the date of the filing of the original complaint and the Judgment were for valuable consideration – either of a benefit to a third party,[5] to keep its business afloat, a promise to pay, or in exchange for legal services.

The defendants next argue that Isenbourg was not a "then existing creditor" during the pendency of the earlier litigation.  The defendants argue that KRS § 378.020 "only works to void transfer made only as to 'then existing creditors.'"  [Record No. 33, p. 11]  They argue that they "had every expectation that Kinder Caviar would prevail in its earlier litigation with Plaintiff. They did not consider Plaintiff to be a creditor of Kinder Caviar prior to the entry of judgment against it."  [Record No. 33, p. 12]  Thus, they argue that any transfers of assets made before December 14, 2011, by Kinder Caviar cannot be rendered void under KRS § 378.020.

KRS § 378.020, by its plain language, applies only to creditors existing at the time of the transfer.  *See Universal C.I.T. Credit Corp v. Bell High Coal Corp.*, 454 S.W.2d 706, 708 (Ky. 1970).   In addition, KRS § 378.010 only protects subsequent creditors from fraudulent conveyances when the transfer is made with actual fraudulent intent.  *Id.*

Isenbourg is not entitled to summary judgment under KRS § 378.020.  The defendants have raised a genuine dispute regarding an important issue of material fact that cannot be properly resolved by this summary judgment motion.  The Court cannot decide on summary

---

5       Kentucky recognizes that a benefit to a third party can constitute valuable consideration.  *Burnett's Adm'x v. Farmers Nat'l Bank*, 49 S.W.2d 1033 (Ky. 1932).

judgment whether the consideration the defendants received in exchange for the monetary transfers was "valuable consideration" within the meaning of the statute.  Because of the number of transfers complained of by Isenbourg, the Court is unable to determine from the summary judgment motion which, if any, conveyances were made for valuable consideration, and which were not.  The defendants have raised a factual issue regarding the transfers, and whether consideration existed for the transfers that occurred after the date that Isenbourg became a "then-existing creditor."   Therefore, the Court declines to grant summary judgment in favor of Isenbourg under KRS § 378.020.

Isenbourg also argues that the conveyances in question were fraudulent under KRS § 378.010, which states that

> [e]very gift, conveyance, assignment or transfer of, or charge upon, any estate, real or person, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers or other persons . . . shall be void as against such creditors, purchasers and other persons.  This section shall not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

Isenbourg acknowledges that KRS § 378.010 requires proof of the transferor's intent to defraud, but argues that fraud should be presumed in these circumstances because "the necessary consequence of a deliberate act by a debtor is to delay, hinder, or defraud his creditors." *Alt v. Burt*, 242 S.W.2d 974, 980 (Ky. App. 1951).  To determine whether Isenbourg has sufficiently shown evidence of fraud in this case, the Court turns to Isenbourg's arguments regarding "badges of fraud."

## B.    Badges Of Fraud

Isenbourg argues that sufficient badges of fraud exist to establish that the transfers in question are fraudulent.   [Record No. 30-2, p. 9]   Generally, in an action to set aside a conveyance for fraud, the fraud must be established by the heightened standard of clear and convincing evidence. *Russell Cnty. Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 311 (Ky. App. 1975).   However, one exception to the standard of proof is the doctrine of badges of fraud. Badges of fraud exist when: 1) the transfer or conveyance is between persons who are related or occupy a confidential relationship, 2) where the transfer or conveyance contains false statements and recitals as to consideration, 3) where the transfer or conveyance is made by a debtor in anticipation of a suit against him or after a suit has begun or is pending against him, and 4) where the transfer or conveyance is made by a debtor who transfers all or any appreciable part of his property when he is insolvent or financially embarrassed. *Id.* at 311.   A plaintiff's showing of a badge of fraud allows a court to presume intent to defraud. *Id.* at 312.   This presumption shifts the burden of proof to the defendant, who must then establish, by clear and convincing evidence, a legitimate reason motivating the transfer. *Id*.

Isenbourg argues that there are two such badges of fraud in the transfers in this case. First, Isenbourg argues that the transfers to Donald Kinder give rise to a presumption of fraudulent intent because "the parties to the transfers in question occupy a confidential and close familial relationship." [Record No. 30-2, p. 9]   Isenbourg also argues that all transfers made after the previous suit was filed in 2009 are presumed to be fraudulent because they were made after the lawsuit was filed.  A transfer by a debtor in anticipation of a suit against him or while

it is pending against him is a badge of fraud.  *Allen v. Ligon*, 175 Ky. 767, 771 (1917); *see also*

*Hager v. Coleman*, 208 S.W.2d 518 (Ky. Ct. App. 1948); *Trent v. Carroll*, 380 S.W.2d 87 (Ky.

Ct. App. 1964).  A conveyance in anticipation of a lawsuit is prima facie fraudulent.  *James v.*

*Stokes*, 261 S.W. 868, 876 (Ky. Ct. App. 1924)

Isenbourg has sufficiently shown that both of these badges of fraud exist, and has shifted

the burden to the defendants to show that transfers made after the filing of the original suit had

a legitimate reason motivating the transfer.  *See In re Montalvo*, 324 B.R. 619 (Bankr. W.D. Ky.

2005).  However, the defendants have created a genuine issue of material fact regarding why the

previous transfers occurred.  The defendants have submitted affidavits regarding the transfers,

and detailing their intent in making the transfers. [Record Nos. 36-39] The defendants state that

they "never attempted to defraud or otherwise hinder the Plaintiff in collecting its judgment."

[Record No. 33, p. 12]  In addition, they have asserted legitimate reasons motivating the

transfers, including an attempt to keep their business afloat, a business loan to their son in

exchange for a promissory note, as well as following the advice of their accountant and other

reasons that, if true, would constitute legitimate reasons.  Therefore, the Court declines to

conclude that all transfers made after the filing of the original lawsuit are void.  Instead, the

defendants have the burden of proving that each of the transfers was for a legitimate reason, and

the defendants must prove this by clear and convincing evidence.

### C.    The Proper Remedy For Fraudulent Conveyances

The defendants argue that Isenbourg is asking for an improper remedy under the

fraudulent conveyance statute for several reasons.  First, the defendants argue that the remedy

sought is improper because it asks the Court to re-impose the previous Judgment already entered against Kinder Caviar. The defendants further argue that the remedy sought is improper because it violates the defendants' right to due process, by imposing a judgment whereby Defendants BlackStar Fish Co., BlackStar Caviar, and Donald Kinder were unable to defend themselves.

The proper remedy for a fraudulent conveyance claim is the nullification of the transfer by returning the property at issue back to the transferor. *GATX Corp. v. Addington*, No. 11-122-DLB, 2012 U.S. Dist. LEXIS 64819, at *17 (E.D. Ky. May 9, 2012). Regardless of the remedy sought, a direct liability fraudulent conveyance claim is only actionable against the transferor or transferee. *Id.* Although the primary remedy in a fraudulent conveyance claim is to void the fraudulent conveyance, some states allow the creditor to seek compensatory damages from a transferee as an alternative form of relief. Because "Kentucky courts have not explicitly reached this conclusion," the Court declines to extend Kentucky law to allow for compensatory damages from a transferee. *Id.* at *17-18. Thus, the remedy available to Isenbourg is for the Court to void the conveyances deemed fraudulent by the Court. Because the Court is limiting the remedy to voiding the fraudulent conveyances, there are no due process concerns regarding any defendants — including BlackStar Fish Co. and Donald Kinder — not party to the original suit. Thus, the defendants' due process concerns on this issue are without merit.

### D.  Then-Existing Creditor

Additionally, there is a genuine issue of fact regarding the point at which Isenbourg became a creditor of the defendants. Isenbourg asserts that it became a "then-existing creditor" at the time that the original complaint was filed on June 26, 2009. In the alternative, Isenbourg

argues that it became a "then-existing creditor" at the time that the Court granted summary judgment in its favor on the issue of liability on February 22, 2011. Defendant Kinder Caviar contends that it reasonably believed that it would prevail in the previous matter, and asserts that Isenbourg did not become a creditor until the entry of the Judgment in December 2011. Although Kentucky courts have given little guidance regarding when a party becomes a "then-existing creditor" within the purview of fraudulent conveyances, the reasonableness of Kinder Caviar's belief that it would prevail in the prior litigation is not relevant to the issue of Isenbourg's status as a creditor.

Kentucky courts have held that, within the context of real property, the transfer of property in anticipation of or pending a lawsuit is a badge of fraud. *Trent v. Carroll*, 380 S.W.2d 87, 90 (Ky. 1964). However, Kentucky courts have not explicitly decided whether a creditor can be considered a "then-existing" creditor prior to the entry of a Judgment against the debtor. There is some authority that KRS § 378.020 includes obligations to pay that are contingent on the happening of other events. *See Madison Capital Co., LLC v. Smith*, No. 3:08CV-382-H, 2009 U.S. Dist. LEXIS 17748, at *12-13 (W.D. Ky. Mar. 4, 2009) (recognizing that no recent Kentucky cases provide guidance on the definition of the terms under KRS § 378.020, but stating that "the fact that a guarantor's obligation to pay is continent (or dependent on other events) does not make him any less a debtor in the broad sense of the term").

When examining the intent of the fraudulent conveyance statutes under Kentucky law, the main purpose is to place the creditors — in this case Isenbourg — in the same position it would have been in immediately prior to any voidable conveyance. *Id*. at *10. Thus, the Court

finds that the relevant date of inquiry in this matter is the date on which Isenbourg filed its original complaint (*i.e.*, June 26, 2009).  The reason for this finding is two-fold: first, Isenbourg has sufficiently shown that a badge of fraud has cast suspicion over transfers made during the pendency of the prior lawsuit.  Second, using the date of the filing of the prior complaint is the most likely mechanism for accomplishing the goal of putting Isenbourg in the position it would have been prior to any transfers of property made without good faith.  Thus, Kinder Caviar is required to show, by clear and convincing evidence, that all transfers made after June 26, 2009, were made in good faith and for legitimate reasons.

### III.

Although Isenbourg has shown that "badges of fraud" exist regarding at least some of the transfers at issue, the defendants have raised genuine issues of material fact regarding whether certain transfers were made for valuable consideration under KRS § 378.020.  At trial, Defendant Kinder Caviar will be required to show, by clear and convincing evidence, that the transfers in questions were made in good faith and for legitimate reasons.  However, because material disputes of genuine fact exist surrounding some of the transfers, it is hereby

**ORDERED** that Plaintiff Princesse d'Isenbourg et Cie., Inc.'s Motion for Summary Judgment [Record No. 30] is **DENIED**.

This 14th day of January, 2013.



Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**